## In the Matter of the Estate of WILLIAM PENROSE, Deceased.

Surrogate's Court, Erie County, Sectember 27, 1937.

*Frederick F. Grotz,* for the administrator *c. t. a.*

*James P. Schaus,* for the James Penrose heirs.

HART, S. Catherine Brady, domiciled and residing in the Province of Ontario, Dominion of Canada, made her last will and testament, dated January 10, 1926, and died December 14, 1927. Her will was admitted to probate in the Surrogate's Court of the county of Victoria in the said Province. By her will she made

certain specific bequests and then devised and bequeathed all the rest and residue of her estate, both real and personal, to her executors and trustees, in trust, etc., and to pay the income and interest derivable therefrom from time to time to her husband, Nicholas Brady, for and during the term of his natural life and in trust on the death of her husband and after payment of funeral expenses to divide the trust fund into six equal parts, and to pay one-sixth parts to each of her brothers, James Penrose and William Penrose.

William Penrose, brother of Catherine Brady, domiciled and residing in the State of New York, made his last will and testament, dated January 28, 1926, and died the 5th day of February, 1926. His will was admitted to probate in the Surrogate's Court of the county of Erie in the State of New York. James J. Penrose was appointed executor. James J. Penrose died recently and his brother, Dr. William Penrose of Buffalo, N. Y., was duly appointed administrator with the will annexed. By the terms of the will of William Penrose his son, James J. Penrose, received three-quarters of the residue of his estate.

Shortly after Dr. William Penrose was appointed administrator as aforesaid, the executor of Catherine Brady, deceased, made a partial distribution of the corpus of her estate, and in so doing presumed that Dr. William Penrose was the proper person to receive the share of William Penrose, deceased, and accordingly forwarded to Dr. William Penrose a check for a certain sum of money. Dr. William Penrose distributed the said money as though William Penrose had died intestate. The heirs of James J. Penrose contend that the said money should have been distributed according to the terms of the will of William Penrose.

The Wills Act of Ontario (Revised Statutes of Ontario [1927], chap. 149, § 36) provides as follows: " 36. (1) Where any person, being a child or other issue or the brother or sister of the testator to whom any real estate or personal estate is devised or bequeathed, for any estate or interest not determinable at or before the death of such person, dies in the life-time of the testator either before or after the making of the will, leaving issue, and any of the issue of such person are living at the time of the death of the testator, such devise or bequest shall not lapse but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention appears by the will."

It is by virtue of this section that the gift to William Penrose does not lapse, but it does not control the distribution of this gift. As stated before, William Penrose left a will which was duly probated

in the Surrogate's Court of Erie county, the contents of which is hereinbefore set forth. This will was probated before Catherine Brady died.

It was stated in *Moultrie* v. *Hunt* (23 N. Y. 394, at p. 403): "Nothing is more clear than that it is the law of the country where the deceased was domiciled at the time of his death, which is to regulate the succession of his personalty in the case of intestacy. Judge Story says, that the universal doctrines were recognized by the common law, is, that the succession to personal property, *ab intestato*, is governed exclusively by the law of the actual domicil of the intestate at the time of his death. (Conf. Laws, § 481.) It would be plainly absurd to fix upon any prior domicil in another country. The one which attaches to him at the instant when the devolution of property takes place, is manifestly the only one which can have anything to do with the question. Sir RICHARD PEPPER ARDEN, Master of the Rolls, declared, in *Somerville* v. *Somerville* (5 Ves. 750), that the rule was that the succession to the personal estate of an intestate was to be regulated by the law of the country in which he was domiciled at the time of his death, without any regard whatever to the place of nativity, or the place where his actual death happened, or the local situation of his effects."

It is perfectly apparent that the Surrogate's Court of Erie county has jurisdiction of the disposition of the proceeds of this gift.

The question now presented is whether or not William Penrose could devise and bequeath a possible interest that at the time of his death was set forth in the will of Catherine Brady, which instrument did not become effective at the time of William Penrose's death.

The rule governing this question is that a legatee who died before the testator could not bequeath what he would have received under the testator's will if he had survived him. (1 Schouler on Wills [6th ed.], § 27, p. 34; *Glenn* v. *Belt*, 7 Gill & J. [Md.] 362.)

It has been held that the possibility of a reverter is not descendible or devisable either in common law or Revised Statutes. (See *Trustees of Calvary Presbyterian Church* v. *Putnam*, 129 Misc. 506.)

In *Matter of Marson* (128 Misc. 791) the testatrix gave her residuary estate to her executor in trust for the benefit of her sister, Marion Cook, with the direction to pay the income to her during her life. The remainder after the termination of the trust estate was disposed of in the following language:

" ' *Eighth.* Upon the death of my said sister Marion Cook, I direct that from the money and property so held in trust as above provided, there be paid out, if sufficient therefor, and if not, then *pro rata,* to the following persons, the amounts designated, *if*

*living at such time.'* " Then follow gifts to her nephew George Cook, $500; to Homer Fort, $2,000; to Estelle Fort, $1,000, and to Kate Hovey, $500. The will continues:

" '*Ninth*. All the rest, residue and remainder of my property, both real and personal, after making the payments specified in paragraph ' eighth ' hereof, and any and all sums which shall fall into my residuary estate *by reason of the death of any of the persons to whom payments are directed to be made by this Will, before the time appointed for distribution*, and the amount of any legacy which shall lapse by reason of the death of any of the beneficiaries named herein, I give and bequeath, and direct my executor and trustee to pay to Charles H. Luscomb of the borough of Brooklyn, City of New York, who has been my friend and lawyer for nearly thirty years *if living, and if dead, to his heirs.'* "

Charles H. Luscomb predeceased Marion Cook, the life tenant. He attempted to dispose of his interest in the estate of Emma A. Marson by will. At page 793 it is stated by Surrogate FOLEY: " The use of the words ' if living ' with respect to the contingent gifts to the named beneficiaries in paragraph ' eighth ' throws strong light upon the similar meaning intended by the words ' if living ' with respect to the remainder to Mr. Luscomb, that is, they required him to survive the life tenant before he took the remainder. His death, therefore, before that of the life tenant terminated his interest in the fund and rendered nugatory his attempt to bequeath it in his will. Equally convincing is the provision for the substitution of his heirs. If Charles Luscomb be dead at the event fixed by the decedent for the termination of the trust, the alternative and substitutional gift to the heirs is ' consistent with a construction which postpones the hour of vesting until the hour of division, or subjects a title which has vested to intermediate contingencies.' (*Matter of Evans*, 234 N. Y. 42, 47; *Matter of Wronkow*, 127 Misc. 679.) "

William Penrose predeceased Catherine Brady, the testatrix, and her husband, the life tenant. All that he ever had was the possibility of a distributive share in the estate of Catherine Brady. Unquestionably she could have changed her will at any time and eliminated the possibility.

I hold that the distributive share in question could not be bequeathed by William Penrose. The proper disposition is for the administrator with the will annexed to distribute the same according to the laws of intestacy of this State.

Let a decree enter accordingly.